# United States Court of Appeals
## For the First Circuit

No. 02-1170

WILLIAM W. ADAMS, ET AL.,

Plaintiffs, Appellants,

v.

BOWATER INCORPORATED, ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Gene Carter, U.S. District Judge]

Before

Boudin, Chief Judge,

Torruella and Howard, Circuit Judges.

Patrick N. McTeague with whom James W. Case, McTeague, Higbee, Case, Cohen, Whitney and Toker, P.A. and William T. Payne were on brief for appellants.
Mary Ellen Signorille, AARP Foundation Litigation, and Melvin Radowitz, AARP, on brief for AARP, Amicus Curiae.
Thomas J. Piskorski with whom Brian J. Hipp, Seyfarth Shaw, Daniel A. Pileggi and Roy, Beardsley, Williams & Granger, LLC were on brief for appellees.

December 17, 2002

BOUDIN, **Chief Judge**. The main question on this appeal is whether the case in the district court was properly dismissed as moot after the challenged conduct ceased or was undone. The plaintiff-appellants are 551 employees of Great Northern Paper, Inc. ("Great Northern"); the principal defendants are Bowater Incorporated ("Bowater") and the pension plan administered by Bowater for its own employees and those of Great Northern.

The background facts are undisputed. In August 1999, Great Northern, until then a subsidiary of Bowater, was sold in a share sale to a third party. Bowater, however, retained the assets and responsibilities of the pension plan that covered both Bowater and Great Northern employees. In the same month, Bowater announced that it would amend the plan to cut back certain early retirement benefits that the plan offered to Great Northern employees. The plan was so amended in October retroactive to August 13.

In brief, the plan prior to August 1999 had allowed employees with extensive service at Great Northern to opt for early retirement and yet receive pensions as if they had retired at ordinary retirement age or, in other cases, with something less than the usual discount in benefits for early retirement. For example, an employee who had worked 30 years could retire at age 60 and receive the same benefits as if he had worked to 65. In effect, Bowater's amendment meant that future work by employees at

Great Northern, now no longer a Bowater subsidiary, would not count for purposes of early retirement.

Whether and to what extent an employer can cut back on such benefits for employees who have not yet retired is governed by provisions of ERISA--in particular, by section 204(g), 29 U.S.C. § 1054(g) (2000). For present purposes, the details of the statute and its application here are unimportant; it is enough to say that Bowater maintained that its cut-back was lawful and that the employees took the opposite position. In January 2000, the Bowater employees brought the present action in federal district court under ERISA against Bowater and the plan.

The main count of the complaint (count I) sought a declaration that the plan amendment violated section 204(g) and an order requiring the defendants to delete the amendment. Other counts (counts II and III) sought further relief for ten of the plaintiffs who said that they had relied on Bowater's statements about the amendment and advice to individual employees; the ten plaintiffs said that as a result they had accepted lump sum payments, surrendering their rights to the greater benefits that would have been available to them under the original plan.

At this point, Bowater began to retreat but reluctantly. In March 2000, Bowater, as plan administrator, sent a letter saying that work done by Great Northern employees would continue to be credited toward early retirement; the letter did not explain how

this could be reconciled with the plan amendment. In the same month Bowater filed its answer to the complaint which continued to deny that the plan amendment was unlawful. In April, Bowater amended the plan to conform to the letter, but it declined to enter into a consent decree conceding that the original amendment was unlawful or promising not to adopt the same amendment in the future.

Count I was referred to a magistrate judge and, based on her recommendation, the district court ruled in September 2000 that count I was moot. Litigation on counts II and III continued until, in October 2000, Bowater posed a notice agreeing to allow full benefits under the original plan to those who had taken a lump sum payment in exchange for surrendering their right to full benefits. In June 2001, Bowater amended the plan to conform to this promise of full benefits. Thereafter, the district court ruled that counts II and III were moot.

The plaintiffs have now appealed, challenging the mootness rulings. In substance, they say that Bowater has never conceded that its original amendment was unlawful and, absent a decree, Bowater remains free to reinstitute that amendment in the future. A claim to attorney's fees, which ERISA permits, would also be strengthened by such a decree, although this is not a basis for litigating a case that is otherwise moot. See Friends of the

Earth, Inc. v. Laidlaw Envtrl. Servs., Inc., 528 U.S. 167, 192 n.5 (2000). The issue is quite close.

Where during litigation a defendant ceases to engage in challenged conduct and restores the status quo ante, the lawsuit may or may not be moot. The Supreme Court has said that such a case is moot only if the defendant meets his "heavy burden" of persuading the court that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." See Friends of the Earth, Inc., 528 U.S. at 189 (quoting United States v. Concentrated Phospate Export Ass'n., 393 U.S. 199, 203 (1968)); accord Nunez-Soto v. Avarado, 956 F.2d 1, 3 (1st Cir. 1992). Here, the district court determined that any threat that the amendment would be introduced was "speculative" and that the defendants' behavior could not reasonably be expected to recur.

At first blush, this might appear to be a factual finding entitled to respect unless clearly erroneous. See Vinick v. United States, 205 F.3d 1, 6 (1st Cir. 2000). However, no evidence was presented as to the likelihood that Bowater will reintroduce its original amendment; and, where the district court applies an abstract standard to known facts, the extent of deference accorded on review varies from substantial deference to none at all, depending on the subject matter and on other circumstances. In re Extradition of Howard, 996 F.2d 1320, 1327-28 (1st Cir. 1993). In mootness matters, reviewing courts tend to exercise their own

judgment, see, e.g., Verhoeven v. Brunswick Sch. Comm., 207 F.3d 1, 5 (1st Cir. 1999), and both sides agree that our review here is de novo.

Bowater controls the information about its own intentions and has made no declaration as to any firm plan. This gap in information might be weighed against Bowater (cf. Friends of the Earth, Inc., 528 U.S. at 189 ("defendant's heavy burden")), but we prefer to rest our decision on somewhat different grounds. After all, Bowater could plausibly say that it has no plans one way or the other and thus nothing more to disclose. Still, on this record Bowater cannot say that it has affirmatively ruled out the possibility of reintroducing the amendment.

The Supreme Court's primary test--"reasonably be expected to recur"--suggests an estimate of raw probabilities. At either end of the spectrum, this is probably the intended approach. If there is a high likelihood of recurrence, the case should not be deemed moot; if very low, mootness ought to follow. But in the middle ground, we doubt that the Supreme Court meant woodenly to exclude all other factors, including equitable or other considerations, bearing on whether a case that began with a concrete controversy should be dismissed when the conduct ceases; its own case law suggests that other concerns can play a role.[1]

---

[1]Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 186 n.9 (1982) (mootness inappropriate where alleged wrong was "capable of repetition without review"); Adarand

Here, the likelihood of recurrence being very hard to estimate, several such considerations work in favor of litigating this case to judgment. One--a predicate point but not the decisive consideration--is that Bowater has been persistently unwilling either to admit that its amendment was unlawful or to say that it will not be reintroduced. This refusal may make sense as a management decision to preserve all options--after all, the ERISA precedents may develop in Bowater's favor--but it suggests that the possibility of recurrence is not wholly fanciful.

Of course, if the risk were merely that the company would change position next month, it might still appear to be extremely low and easy to brush aside. But this case concerns retirement benefits that are earned over a substantial period and can affect pay-outs that may occur many years into the future. The ability of workers to plan their careers, and their savings, is impaired by uncertainties as to what Bowater might do three, five, or even ten years from now. Further, the withdrawal of the amendment is not like the abandonment of plans to build a bridge or a dam: the amendment could be reintroduced without cost to Bowater at a moment's notice; again, imagine that a couple of favorable appellate decisions come down the pike next year.

Constructors, Inc. v. Slater, 528 U.S. 216, 224 (2000) (signaling reluctance to moot a case "that has been litigated up to this Court and back down again"); Friends of the Earth, Inc., 528 U.S. at 191-92 & n.5 (noting that sunk costs to the judicial system counsel against finding mootness)

Some uncertainties cannot be avoided. All kinds of threats to expected pensions can develop and expectations can often be disappointed. But here a specific threat has been posed and a substantial investment in litigation costs has been made to obtain an answer to it; plaintiffs had already briefed their summary judgment motion on the merits when count I was dismissed. All that plaintiffs have asked is the chance to put the matter completely to rest.

Finally, Bowater could easily have said on the record that it would not in the future reintroduce for Great Northern workers the substance of the challenged amendment. If this had been done without hesitation in the district court, this almost certainly would have persuaded us that the quarrel was moot. Yet, even at oral argument on this appeal, Bowater's counsel said he could not give such a commitment to the plaintiffs.

The plaintiffs have relied heavily upon Walling v. Helmerich & Payne, Inc., 323 U.S. 37 (1944). There, the Supreme Court refused to declare moot a wage and hours enforcement case where the defendant had latterly altered his wage schedule to conform to the law; the Court observed that defendant "has consistently urged the validity of the [original schedule] and would presumably be free to resume this illegal plan were not some effective restraint made." Id. at 43. The Supreme Court has rarely referred to this language again, although lower courts have

often relied upon Walling.  See, e.g., Donovan v. Cunningham, 716 F.2d 1455, 1461-62 (5th Cir. 1983), cert. denied, 467 U.S. 1251 (1984).  See also 13A Wright & Miller, Federal Practice and Procedure § 3533.5, at 326-28 & n.11 (2d ed. 1984).

In our view, Walling--although atmospherically helpful to plaintiffs--should not be read mechanically to require a defendant always to denounce his own conduct.  Mootness turns primarily on future threats, not upon penance.  Other concerns (e.g., publicity, concern about attorney's fees), or perhaps mere stubbornness, may cause a retreating defendant to maintain that his now abandoned position was lawful.  But where a defendant is unwilling to give any assurance that the conduct will not be repeated, a natural suspicion is provoked that recurrence may well be a realistic possibility.

Just how possible depends very much on the circumstances. Here, the circumstances bring this case into a middle ground where recurrence is certainly more than a theoretical possibility; depending on how case law develops, it could easily be in defendants' interest to try to reinstate the amendment.  In this situation, the prudential factors that tip the balance against mootness have been candidly set forth.  Thus, in our view count I is not moot.

As to counts II and III, the ten plaintiffs separately named in those counts appear to be in the same position as all of

the hundreds of other employees with this exception: the ten say that not only did the now rescinded amendment reduce their prospective benefits but, in addition, they relied on the change to elect a less favorable retirement option. When the defendants withdrew the amendment, they also allowed the employees to undo their misguided elections and restored the status quo ante. Whether any of the ten plaintiffs is now retired is unclear, but there is no indication that the ten have any current grievance.

Obviously the ten employees in counts II and III have the same interest as all others in assuring that the original plan amendment is not reinstated, but whether there is anything else left for them to litigate is not apparent. It seems scarcely conceivable that the defendants, having allowed the elections to be withdrawn, would ever argue that the elections were still valid and binding. In any event, it is hard to tell from the filings below or the briefs on appeal whether there is anything live about counts II and III except so far as the plaintiffs there seek the same declaration as the plaintiffs in count I. This, we think, can be sorted out on remand.

On remand, we do not foreclose the possibility that defendants can make commitments so firm and effective as to preclude the need for litigation. Whether the plaintiffs can recover attorney's fees does not necessarily depend on whether a formal judgment has been entered. The Supreme Court did require a

judgment under one statute, <u>Buckhannon Bd. & Care Home, Inc.</u> v. <u>W. Va. Dep't of Health & Human Res.</u>, 532 U.S. 598, 600 (2001), but the ERISA statute is differently phrased and conceivably the result could be different.

Accordingly, we <u>vacate</u> the judgment dismissing the case as moot and <u>remand</u> for further proceedings consistent with this decision.

<u>It is so ordered</u>.