Conservation Action v. Moore          CV-02-193-JD   12/18/02
                    UNITED STATES DISTRICT COURT FOR THE
                              DISTRICT OF NEW HAMPSHIRE


Conservation Action Project and
American Lands Alliance

         v.                                   Civil No. 02-193-JD
                                              Opinion No. 2002 DNH 215
Randy Moore, Regional Forester,
Eastern Region, United States
Forest Service and Terry Miller,
District Ranger, Saco Ranger District,
White Mountain National Forest,
United States Forest Service


                              O R D E R


         Conservation Action Project and American Lands Alliance

bring suit against Randy Moore, Regional Forester for the Eastern

Region, and Terry Miller, District Ranger for the Saco Ranger

District of the White Mountain National Forest, in their official

capacities with the United States Forest Service, seeking

declaratory and injunctive relief.  The plaintiffs contend that

the defendants did not comply with environmental laws before

authorizing the "Iron Maple Timber Sale" in the White Mountain

National Forest.  The defendants move to dismiss on the grounds

that because the authorization for the "Iron Maple Timber Sale"

has been withdrawn, the plaintiffs' complaint is moot and not

ripe.  The defendants also move to dismiss on the ground that the

withdrawal of the final decision authorizing the sale eliminates

the final agency action in this case, which is an essential

predicate to the court's subject matter jurisdiction under the Administrative Procedures Act. The plaintiffs object.

Background

The White Mountain National Forest ("WMNF") is located in northern New Hampshire and western Maine and comprises almost 800,000 acres of public land. The United States Forest Service ("Forest Service") is responsible for managing public lands in the WMNF. In April of 1998, the Forest Service announced that it would propose a timber sale in the WMNF. In February of 2001, the Forest Service issued a pre-decision environmental assessment. Public comment on this environmental assessment was accepted by the Forest Service, including several comments from the plaintiffs in this case. On October 5, 2001, the Forest Service issued a final environmental assessment, a "finding of no significant impact" ("FONSI"), and a final decision notice approving a plan for the harvesting of timber on approximately 140 acres of the WMNF in the Saco Ranger District ("final decision"). This plan is known as the Iron Maple Timber Sale.

After exhausting administrative remedies, the plaintiffs brought this action in May of 2002, seeking judicial review of the final decision authorizing the timber sale pursuant to the Administrative Procedures Act ("APA"). The plaintiffs allege that the final decision authorizing the sale does not meet the

requirements of the National Forest Management Act, 16 U.S.C. §
1600 et seq. ("NFMA") and the National Environmental Policy Act,
42 U.S.C. § 4321 et seq. ("NEPA").  The plaintiffs seek a
declaration that the defendants violated NFMA and NEPA by
authorizing the timber sale, an injunction compelling the
defendants to comply with NFMA and NEPA before proceeding with
the sale, and an order compelling the defendants to withdraw the
decision approving the sale.

In July of 2002, the defendants retracted the final decision
and FONSI authorizing the timber sale.  Explaining the
retraction, the Forest Service cited the need "to allow for
incorporation and analysis of additional available information
relative to the environmental effects of the project."  Def.'s
Attach. 1.


## Discussion

The defendants raise several jurisdictional issues including
mootness.  Because the issue of mootness is dispositive, it is
not necessary for the court to address the other issues.

The defendants argue that the plaintiffs' complaint is moot
because the Forest Service has retracted the final decision and
FONSI authorizing the timber sale.  There is no dispute that,
when filed, the plaintiffs' claim was ripe for review and
properly before the court under 28 U.S.C. § 1331.  Although an

3

action may present a live controversy at the time of filing, subsequent events may render the action moot. See, e.g., Kremens v. Bartley, 431 U.S. 119, 129 (1977). The doctrine of mootness precludes federal courts from determining the merits of a case which has lost "its character as a present, live controversy of the kind that must exist [if federal courts are] to avoid advisory opinions on abstract propositions of law." See Hall v. Beals, 396 U.S. 45, 48 (1969) (per curiam). When no case or controversy exists, a claim is moot because its resolution would not affect the parties' "legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496 (1969).

The October 5, 2001 final decision, which is the subject of this litigation, has been withdrawn. Miller has disavowed reliance on the decision in the formulation of future Forest Service policy in the region:

> [The] conclusions made in the withdrawn October 5, 2001 Decision Notice and FONSI will not, in any way, prejudice or guide [his] evaluation of the relevant information and public comments, or any decision arising therefrom, with respect to the vegetative management in the area that was addressed by the withdrawn Iron Maple Project Decision and FONSI.

Decl. of Terry Miller ¶ 6. Based on that statement, the Forest Service authorization of the timber sale is of no force or effect. Therefore, the court is "without power to grant injunctive and declaratory relief" because the challenged actions "no longer exist," (See D.H.L. Assocs., 199 F.3d 50, 54 (1st Cir.

4

1999) unless an exception to the mootness doctrine applies.  See New England Reg. Council of Carpenters v. Kinton, 284 F.3d 9, 18 (1st Cir. 2002) ("[I]t would be pointless either to enjoin the enforcement of a regulation that is no longer in effect or to declare its constitutional status.").

The plaintiffs contend that their complaint satisfies an exception to the mootness doctrine which permits courts to hear otherwise moot cases if a defendant voluntarily ceases allegedly illegal conduct to avoid a ruling on the merits.  See City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982); Adams et al. v. Bowater Inc., et al., 2002 WL 31819513 (1st Cir. Dec. 17, 2002) (pinpoint citations unavailable).  The voluntary cessation exception to mootness "traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior."  See City News & Novelty, Inc. v. Waukesha, 531 U.S. 278, 284 n.1 (2001) (citing Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 66-67 (1987)).  A defendant asserting that its voluntary cessation of challenged conduct moots a case bears a "'heavy burden of persuading' the court that the challenged conduct cannot reasonably be expected to start up again."  See Friends of the Earth v. Laidlaw Envtl. Servs., 528 U.S. 167, 189 (2000) (quoting United States v. Concentrated Phosphate Export Ass'n, 393 U.S. 199, 203 (1968)).  In evaluating

5

the defendants' voluntary cessation, "the court should consider 'the bona fides of the expressed intent to [discontinue], the effectiveness of the discontinuance and, in some cases, the character of the past' behavior." Vagalebre, et al. v. SAU 47, et al., Civil No. 97-135-JD, at *6 (D.N.H. Feb. 24, 1998) (quoting United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953)). The voluntary cessation exception "applies 'only when there is a reasonable expectation that the challenged conduct will be repeated following dismissal of the case.'" Kinton, 284 F.3d at 18 (quoting D.H.L. Assocs., Inc., 199 F.3d at 55); see also Adams, 2002 WL 31819513.

The plaintiffs support their contention that the Forest Service will likely reauthorize the allegedly illegal timber sale by noting the Forest Service's use of the phrase, "for the time being," in a public notice of the withdrawal. The public notice which is offered as evidence of the Forest Service's intention to repromulgate the timber sale with the same alleged deficiencies, however, does not provide any indication that the Forest Service intends not to comply with NEPA and NFMA.[1]  Instead, the notice

_____

[1]  The excerpt offered by the plaintiffs in their opposition motion abbreviates the public notice of Thomas G. Wagner, Forest Supervisor. The full context of the relevant part of the notice provides that:

Since coming to the White Mountain National Forest, I

6

indicates the Forest Service's awareness of the points raised by this lawsuit, its intent to comply with the requirements of NEPA, and its intention to "implement projects that accomplish resource objectives and meet the standards set for both public and legal review." Pl.'s Ex. 4. These intentions are consistent with the Forest Service's public statement that it withdrew the authorization "to allow for incorporation and analysis of additional available information relative to the environmental effects from the project." Def.'s Ex. 3. The Forest Service's actions and statements do not indicate an intention to reissue a legally deficient decision once the threat of litigation has passed.

The plaintiffs also contend that the Forest Service's failure to accept the plaintiffs' settlement proposals, stipulating to legal obligations for future timber sales, indicates that the alleged violations will likely recur.

---

have carefully reviewed the Iron Maple sale and the points raised within the lawsuit. District Ranger, Terry Miller and I have discussed the Iron Maple sale and he has decided to withdraw the sale for the time being while he incorporates, analyzes and documents additional available information relative to the environmental effects from the project. This will be done in a timely manner consistent with the National Environmental Policy Act.

Pl.'s Ex. 4.

However, "[m]ootness turns primarily on future threats, not upon penance." Adams, 2002 WL 31819513. Although the Forest Service has made clear that it does not agree with the plaintiffs' articulation of its legal obligations, it has represented that:

> Any future action that the Forest Service might take with respect to vegetative management in the area that was addressed by the withdrawn Iron Maple Project Decision Notice and FONSI will be taken in accordance with decision-making requirements prescribed by Federal law and regulations, including, but not limited to: the requirements of the National Environmental Policy Act; requirements of the National Forest Management Act; and opportunities for pre-decisional public comments and post-decisional administrative appeal under 36 C.F.R. § 215.

Decl. of Terry Miller ¶ 4. This statement indicates that the Forest Service intends to comply with applicable environmental laws in future actions. The plaintiffs have offered no substantial basis for the court to conclude that the Forest Service has acted in bad faith or will reissue the timber sale without complying with the requirements of NEPA and NFMA.

A conclusion that the Forest Service will repromulgate the allegedly illegal timber sale would be "mere speculation." See Vagalebre, et al., Civil No. 97-135-JD, at *8. Absent an "indication of contrary intent," the court should not "presume" that the Forest Service will repromulgate the allegedly illegal timber sale "after the conclusion of this litigation." D.H.L.

<u>Assocs. Inc.</u>, 199 F.3d at 55. The court has no reasonable basis to believe that the violations alleged in the plaintiffs' complaint are likely to recur. On the basis of the evidence of record, there is only a "very low" probability that the Forest Service will reissue a similarly deficient timber sale, therefore, the plaintiffs' claim is moot. <u>See</u> <u>Adams</u>, 2002 WL 31819513. Furthermore, there is no indication that future timber sales are likely to evade judicial scrutiny. Should the Forest Service reauthorize the timber sale, or promulgate a new timber sale in violation of applicable law, the plaintiffs will have the opportunity to pursue administrative and judicial remedies.

<u>Conclusion</u>

For the foregoing reasons, the defendants' motion to dismiss (document no. 8) is granted. The clerk shall enter judgment accordingly, and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

December 18, 2002

cc:  Jed Z. Callen, Esquire
     Neil Levine, Esquire
     T. David Plourde, Esquire

9