**Pedro MENDEZ–SOTO, et al., Plaintiffs**

v.

**Hon. Anabelle RODRIGUEZ, et al., Defendants.**

**Civil No. 02–1608 (JAG).**

United States District Court, D. Puerto Rico.

Aug. 12, 2004.

Francisco R. Gonzalez–Colon, F.R. Gonzalez Law Office, San Juan, PR, for Plaintiffs.

Carlos Del–Valle–Cruz, Department of Justice Commonwealth of Puerto Rico, Ivonne Palerm–Cruz, Commonwealth Department of Justice, Federal Litigation Division, Salvador J. Antonetti–Stutts, Pietrantoni Mendez & Alvarez, San Juan, PR, for Defendants.

### OPINION AND ORDER

GARCIA–GREGORY, District Judge.

On March 4, 2004, this Court dismissed plaintiffs' 42 U.S.C. § 1983 claims for lack of jurisdiction under Article III of the United States Constitution. On March 15, 2004, Pedro Méndez–Soto and Alberto Medina–Velázquez (collectively "plaintiffs") filed a motion for reconsideration (Docket No. 38). For the reasons discussed below, this Court **DENIES** plaintiffs' motion for reconsideration.

### FACTUAL BACKGROUND

Law No. 363 of September 2, 2000 ("Law 363") provided a one hundred percent (100%) salary increase for the technicians of the Property Registry of Puerto Rico, in recognition of the important public service that the technicians render and its effect on the island's economy. (*See,* Statement of Motives, Law 363.)

Plaintiffs Méndez–Soto and Medina–Velázquez are Property Registry technicians, who are also the principal officers of "Junta de Técnicos del Registro de la Propiedad, Inc." ("JTRP"). The "JTRP" is an association of public service employees that is comprised of over 300 Property Registry technicians from all over the island.

Plaintiffs were informed that the Governor's Office had filed an Administrative Proposal with the Legislature of Puerto Rico to abrogate the salary increase provided under Law 363. The Attorney General, co-defendant Anabelle Rodríguez, personally appeared and testified before the House of Representatives' Treasury Commission to present the Governor's official position opposing the salary increase provided by Law 363. Plaintiffs later appeared in front of the same Commission to present their position against the Administrative Proposal and in favor of the salary increase.

On Monday, June 25, 2001, about 300 Property Registry technicians went to the Puerto Rico legislature to lobby against the Administrative Proposal. After much debate, the Governor's Office Administrative Proposal was defeated in the Legislature and Law 363 remained in effect.

Plaintiffs assert that most of the 300 technicians that attended the legislature debates on June 25, 2001 requested a leave of absence for that day by presenting an OP–13 form. The OP–13 is the form customarily used by government employees to charge absences to vacation or compensatory time. Other technicians were treated by their physicians and requested a sick leave. That same Monday, co-defendant Delia Castillo de Colorado[1] contacted all of the 29 Property Registries in Puerto Rico and requested from the supervisors a memorandum containing the names of all the technicians that were absent that day.

On July 5, 2001, co-defendant Anabelle Rodríguez sent a letter to all the technicians that were absent on the day in question, notifying them of the Department of Justice's decision to discount the absent day from their salaries and to sanction them with a three-day salary employment suspension. The letter informed the plaintiffs of their right to request an informal administrative hearing. Accordingly, 175 of the 195 technicians who received letters requested the informal hearing.

Co-defendant Anabelle Rodríguez appointed Sara Gregory Mora to preside over the hearings and to submit a report and recommendation on each of the technicians that requested the informal hearing. The evaluation reports were submitted, recommending the disciplinary action only in those cases where the employee was not able to present evidence that the absence was authorized. Eventually, the Department of Justice began to serve a number of technicians with disciplinary-sanction letters.

Subsequently, on August 15, 2003, co-defendant Anabelle Rodríguez sent a letter to the sanctioned technicians lifting the disciplinary measures imposed previously.

Plaintiffs dispute this court's previous determination that their claim was mooted by defendants' lifting of the sanctions once imposed on plaintiffs. Specifically, plaintiffs argue that: (1) defendants have not met their heavy burden to persuade the court that the challenged conduct cannot reasonably be expected to recur, (2) that in ruling against plaintiffs this court improperly shifted the heavy burden towards plaintiffs, and (3) inasmuch as the instant action seeks damages, declaratory and injunctive relief under U.S.C. § 1983, the denial of injunctive relief would not lead to a subsequent finding of mootness because of the request for damages resulting from an alleged constitutional violation. Each of these claims shall be separately discussed below.

## DISCUSSION

### A. *Mootness*

Generally, a case becomes moot if "it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Los Angeles County v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979). A party can have no legally cognizable interest in the outcome of a case if the court is not capable of providing any relief which will redress the alleged injury. *Gulf of Maine Fisherman's Alliance v. Daley*, 292 F.3d 84, 88 (1st Cir.2002). As a result, First Circuit precedent supports the notion that the core question that Article III of the United States Constitution compels courts to ask

---

1. Co-defendant Castillo de Colorado is the Property Registry Director at the Puerto Rico Department of Justice.

is whether adjudication of an issue can grant meaningful relief. *Conservation Law Foundation v. Evans,* 360 F.3d 21, 26 (1st Cir.2004). Pronouncing judgment in the absence of any effective remedy would be to wander impermissibly into the realm of the advisory and the hypothetical. *Oakville Development Corp. v. F.D.I.C.,* 986 F.2d 611, 615 (1st Cir.1993).

■ A defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case. *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167, 174, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). The Supreme Court has held that "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* at 190, 120 S.Ct. 693. The First Circuit has described the "reasonably expected to recur test" as an estimate of raw probabilities, such that if there is a high likelihood of recurrence, the case should not be mooted, but if the risk is very low, mootness ought to follow. *Adams v. Bowater, Inc.,* 313 F.3d 611, 613 (1st Cir.2002).

■ Plaintiffs contend that the language employed in the Secretary of Justice's letter, which confirmed the voluntary cessation of the disputed conduct, defeats any claim by defendants to the extent that they have met their heavy burden of persuasion. Specifically, the letter states that plaintiffs' conduct clearly departs from the reasonable and just behavior that can be expected from a public servant who is conscious of his professional responsibilities and duties, and that the Secretary of Justice was not renouncing the authority given to her by the law to act in this situation or condoning or diminishing the graveness and impropriety of the conduct. In light of this letter, plaintiffs ask this court to reconsider its ruling because defendants, it is alleged, have not met their heavy burden of persuading this court that the challenged conduct cannot reasonably be expected to recur, since defendants have not demonstrated any "change of heart".

■ This Court is of the opinion that defendants in this case have met the heavy burden of persuasion imposed when mootness is raised and the allegedly wrongful conduct has been voluntarily discontinued. A major factor in finding mootness in voluntary cessation cases is "whether there are aspects of the factual situation beyond the defendant's control that make recurrence of the challenged conduct unlikely". *Cicchetti v. Lucey,* 514 F.2d 362, 366 (1st Cir.1975). In *Cicchetti,* a person whose driver's license had been suspended without hearing because of his alleged failure to appear in response to a traffic summons brought action for a declaration that the statute under which such suspension was accomplished was unconstitutional. The court held that the case was rendered moot because Cicchetti had to be summoned to appear in court for violating a traffic regulation before he could default a summons, which meant that defendant could not unilaterally engage in the allegedly unconstitutional acts. *Id.* at 366. The case at hand is analogous to *Cicchetti.* Plaintiffs allege that they were penalized for exercising their First Amendment rights in the context of legislative debates regarding targeted salary increases. They specifically claim that because they attended those debates, thereby becoming absent from work and not presenting any excuses for it, they suffered temporary retaliatory measures. As in *Cicchetti,* the allegedly unlawful conduct in the present case was the result of a serendipitous chain of events that included legislative debates addressing concerns directly affecting the

plaintiffs, having almost three-hundred technicians attend those debates and become absent from their workplace, and then, after informal hearings on the issue, the imposition of sanctions by a Cabinet-level supervisor. In short, the conditions were unique and are unlikely to recur. *Los Angeles County v. Davis*, 440 U.S. 625, 632, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979).

■ A defendant's reluctance to concede that the conduct at issue, conduct voluntarily discontinued, was unlawful, has on occasion been a factor that weighs in favor of litigating a case to judgment. *Adams*, 313 F.3d at 614. In *Adams*, a group of employees sued a onetime subsidiary as a result of the former's amendment to a pension plan, an amendment which the plaintiffs considered unlawful. The district court had held that the case was mooted because upon filing of the suit defendants reinstated the previous terms of the plan, yet plaintiffs argued that, absent a judicial decree, defendants were free to restore the disputed amendment in the future. The Court of Appeals for the First Circuit found that where the likelihood of recurrence is "very hard to estimate," several other considerations may be taken into account to side against mootness. *Id.* Among those considerations are that an alleged wrong is capable of repetition without review, that a case has been litigated up and down the judicial system, and the costs to the judicial system of finding mootness. *Id.* at n. 1. Another point to consider is a defendant's persistent unwillingness either to admit that the practice was unlawful or to say that it will not be reintroduced. *Id.* at 614. Nevertheless, *Adams* can be easily distinguished from the present case. In *Adams*, it was specifically noted that depending on the development of case law, it could have become consistent with the employer's in-

terest to try to reinstate the disputed amendment. *Id.* at 615. As such, the possibility of recurrence was a reasonable possibility indeed, in light of the refusal to admit any wrongdoing. In contrast, the Secretary of Justice's temporary decision to sanction the unauthorized absence of plaintiffs is in no way interwoven with the development of case law that might affect the recurrence of the practice by strengthening her position. Additionally, the case has not reached the advanced stages of litigation that could evoke concerns over court costs or time spent. To abandon a case which has been litigated for years "may prove more wasteful than frugal." *Friends of the Earth*, 528 U.S. at 191–92, 120 S.Ct. 693. That is not the case here. The First Circuit has recognized that the possibility of recurrence depends very much on the circumstances. *Adams*, 313 F.3d at 615. Furthermore, a defendant must not always denounce his own conduct, since concerns over publicity, or perhaps mere stubbornness, may cause the retreating defendant to maintain that his position was lawful. *Id.* Likewise, defendants have not suggested any intention to recur that could be inferred from past practices or comments. *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982). Accordingly, plaintiffs' claim that defendants' have not acknowledged any wrongdoing is misguided and misplaced in that it attempts to equate such an omission with evidence that the possibility of recurrence is reasonably likely.

Moreover, the fact that the Legislature reassigned the funds originally appropriated to pay for plaintiffs' benefits is legally irrelevant. Contrary to plaintiffs' characterization, the Secretary of Justice's "noncompliance" with Law 363 did not constitute a repetition of the imputed conduct that allegedly violated plaintiffs' First Amendment rights. The law-amending

whims of the Legislative branch cannot be construed as defendants' conduct in a manner that satisfies the requirement that the same conduct that may have once constituted a violation has recurred.

◼ Plaintiffs also claim that in finding mootness this court improperly shifted the heavy burden of persuasion towards plaintiffs. They specifically rely on *Conservation Law Foundation*, 360 F.3d 21, to support their contention that this Court has not placed the heavy burden on defendants to show that the recurrence of the challenged conduct is not likely. In *Conservation Law Foundation*, the First Circuit found that the same allegedly harmful scheme being challenged continued to exist and was only superficially altered by a subsequent regulation. *Conservation Law Foundation*, 360 F.3d at 26. More importantly perhaps, defendant in that case inadvertently sabotaged any claims to voluntary cessation by admitting that the actions taken were the result of "an abundance of caution" in light of the subsequent appeal. *Id.* at 27. The present case, on the other hand, is easily distinguishable from *Conservation Law Foundation*. The allegedly unlawful conduct that defendants engaged in cannot be described as a regulation that continues to this day and has been only superficially altered by subsequent regulation. To the contrary, the conduct that gave rise to plaintiffs' claim is no more. Equally relevant, there is no evidence to corroborate the claim that the actions that led to the withdrawal of the sanctions were taken in light of caution over a subsequent appeal. Plaintiffs' assertion that the sanctions were lifted after the filing of the instant action seems to ignore the fairly obvious distinction between that and an acknowledgment at oral argument by a defendant's attorney that superficial alterations were made as a cautionary measure pending judicial review. *Id.* As a result, the parallels that plaintiffs are attempting to draw are inapposite.

◼ Notwithstanding plaintiffs' discontent, this Court, following Supreme Court rulings, has placed a heavy burden on defendants to show that the challenged behavior is not reasonably expected to recur. *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222, 120 S.Ct. 722, 145 L.Ed.2d 650 (2000), *citing, Friends of the Earth*, 528 U.S. at 189, 120 S.Ct. 693. The peculiar circumstances of this case reinforce this court's finding that the probability that the same controversy will recur, involving the same complaining parties, is highly implausible. Defendants have argued that the approval of Law 363, coupled with the withdrawal of the sanctions, eliminates the need for judicial expenditure of time, expenses, and academic pronouncements. This Court agrees. Plaintiffs, on the other hand, argue that a scintilla of probability that recurrence is possible suffices. They are mistaken. The "capable-of-repetition, yet evading review" exception is not a juju, capable of dispelling mootness by mere invocation. *Oakville Development Corp. v. F.D.I.C.*, 986 F.2d 611, 615 (1st Cir.1993). It is a doctrine that applies "only in exceptional situations." *City of Los Angeles v. Lyons*, 461 U.S. 95, 109, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). Furthermore, the "capable-of-repetition, yet evading review" exception applies only if the claim of the very same litigant will evade review. *Id.* at 103, 103 S.Ct. 1660. It is not sufficient that other, similarly situated litigants will face the same issue under similar time constraints. *Id.* In the present case, there is no reason to believe that plaintiffs in the future will not be able to seek relief or that hereafter hypothetical unlawful conduct will evade review. Besides, contrary to controlling precedent respecting constitutional viola-

tions arising from an alleged "chilling effect," the instant case does not challenge an exercise of government power that is regulatory, proscriptive or compulsory in nature to the extent that it strengthens plaintiffs' concomitant fears. *Laird v. Tatum*, 408 U.S. 1, 11, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972). In short, the burden was properly placed on defendants and met.

■■■ These aforesaid considerations are not a shifting of the burden to plaintiffs, but instead a meaningful review of the context of the claim. Together with the settled principle that mootness turns primarily on future threats and not upon penance, the inevitable denouement is clear. *Adams*, 313 F.3d at 615. Contrary to plaintiffs' suggestions, the threshold of meeting the burden in mootness cases is not that allegedly wrongful behavior is absolutely shown to never possibly recur, but that it is absolutely clear that the behavior is not *reasonably* expected to recur. *Friends of the Earth*, 528 U.S. at 190, 120 S.Ct. 693. In the case at hand there is no acceptable basis to conclude, without a more substantial factual predicate, that no federal court will ever be in a position to resolve the underlying issues. *Cruz v. Farquharson*, 252 F.3d 530, 535 (1st Cir. 2001). Therefore, this Court holds that defendants have met their burden of proving that the discontinued conduct is not reasonably expected to recur, thus effectively asserting their mootness claim.

B. *Summary Judgment Pertaining to Plaintiffs' Remaining First Amendment Claims*

■■■ Alternatively, plaintiffs claim that because they also seek damages under 42 U.S.C. § 1983 for the alleged unconstitutional retaliatory sanctions imposed on them by the Secretary of Justice for exercising their First Amendment rights,

mootness may not lie. Defendants move for summary judgment on those same constitutional claims. Availability of relief may be sufficient to prevent a case from being moot. *City of Erie v. Pap's A.M.*, 529 U.S. 277, 288, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000). The possibility of even a partial remedy may also be sufficient to prevent a case from being moot. *Parella v. Retirement Bd. of Rhode Island Employees' Retirement System*, 173 F.3d 46, 57 (1999). The possibility of a remedy for damages, however, must be viewed in the milieu of appropriate controlling law.

The Supreme Court has established that there must be a balance between the First Amendment right to comment on matters of public concern and the State's interest as an employer in promoting efficiency of the public service it performs. *Pickering v. Bd. of Educ. of Tp. High Sch. Dist. 205, Will County, Ill.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). When performing this balancing test to determine whether an employee has a valid, actionable claim, the jurisprudence has established a three-part test. *Torres Rosado v. Rotger Sabat*, 204 F.Supp.2d 252, 258 (D.P.R.2002). First, the speech engaged in must involve a matter of public concern. *Connick v. Myers*, 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Secondly, the court must determine whether the employee's First Amendment interest outweighs the government's interest in curbing the employee's expression. *Pickering*, 391 U.S. at 568, 88 S.Ct. 1731. Third, and finally, if the court determines that the public employee's First Amendment interests in speaking out outweigh a legitimate governmental interest in curbing the employee's speech, the plaintiff-employee must show that the protected expression was a substantial or motivating factor in the adverse employment decision; and, if the plaintiff meets this test, the

defendant governmental entity must be afforded an opportunity to show "by a preponderance of the evidence" that it would have reached the same decision even in the absence of the protected conduct. *O'Connor v. Steeves*, 994 F.2d 905, 913 (1st Cir. 1993).

In light of the legal principles discussed above, plaintiffs urge this court to conclude that the First Amendment issue precludes summary judgment because there is sufficient evidence to support the allegation that they suffered a First Amendment violation. Particularly, plaintiffs argue that inasmuch as there is a genuine factual dispute regarding whether they received authorization as per custom and usage in the agency to be absent on the day in question but that defendants later changed the records to reflect the contrary, the material issue of the State's motive in disciplining plaintiffs necessitates preclusion of dismissal. All the same, further consideration of plaintiffs' argument requires adherence to the settled rules governing motions for summary judgment.

To succeed in a motion for summary judgment, the moving party must show that there is an absence of evidence to support the nonmoving party's position. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion, the burden shifts to the nonmoving party to set forth specific facts showing there is a genuine issue for trial and that a trier of fact could reasonably find in its favor. *Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir.2000). The court must view the facts in the light most hospitable to the nonmoving party, drawing all reasonable inferences in that party's favor. *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990).

The conventional means of documenting issues of fact to avoid summary judgment is by affidavit. *Kelly v. United States*, 924 F.2d 355, 358 (1st Cir. 1991). "Neither conclusory allegations [nor] improbable inferences" suffice to defeat summary judgment. *Carroll v. Xerox Corp.*, 294 F.3d 231, 236–37 (1st Cir.2002). Statements contained in a memorandum or lawyer's brief are insufficient, for summary judgment purposes, to establish material facts. *Betances v. Sea–Land Serv.*, 248 F.3d 40, 43 (1st Cir.2001). A nonmovant's failure to present a statement of disputed facts, with specific citations to the record, justifies a court's deeming as admitted the facts presented in the movant's statement of undisputed facts. *Id.* Likewise, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Plaintiffs have failed to raise a genuine dispute over whether the scope and motive of defendants' sanctions were circumscribed to employees absent without justification, which fatally weakens any claim of a violation of First Amendment rights. Plaintiffs have not controverted with specific reference to any affidavit or undisputed fact of the case that the disciplinary sanctions were aimed and imparted only upon those employees who were absent without authorization. Defendants, on the other hand, provided a statement of facts, supported by the affidavits of PRDOJ Assistant Secretary for Human Resources Deliabel Aponte Torres and Human Resources official (and Hearing Officer) Sara Gregory Mora, that provided that certification of *unauthorized* work absences was the basis for the sending of the Secretary of Justice's letters containing

the intent to sanction, and that in those cases where the employee could show that the absence was authorized, it was officially recommended that the letter of intent be left without effect. Plaintiffs' denial of this characterization is only supported by the factual proposition that "almost all" of those who attended the debates were authorized to do so, and by a sworn statement by only one of the plaintiffs, Méndez, who makes conclusory statements regarding others being sanctioned for lack of authorization absent any apparent effort on his part to discuss his own situation. Affidavits opposing summary judgment must set forth such facts as would be admissible in evidence, which would generally exclude hearsay evidence. This affidavit proffered by plaintiffs is irrelevant and insufficient to defeat defendants' properly supported motion for summary judgment. Fed.R.Civ.P. 56(e).

Even in cases where "elusive" concepts such as motive or intent are at issue, if the nonmoving party rests merely upon conclusory allegations, improbable inferences and unsupported speculation, summary judgment may be appropriate. *Goldman v. First Nat'l Bank,* 985 F.2d 1113, 1116 (1st Cir.1993). A party who opposes a properly substantiated motion for summary judgment but fails to muster counter-affidavits or other evidentiary materials "does so at his peril." *Betances,* 248 F.3d at 43. In the absence of bona fide evidence in contravention of defendants' affidavits, this court deems the facts presented in the movant's statement of undisputed facts admitted. Plaintiffs' bombast and bluster, wholly detached from verified facts of record, "cannot serve to blunt the force of a movant's statement of undisputed facts." *Id.* at 44. Accordingly, this court admits the defendants' statement of facts that the scope and motive of the disputed discipline was circumscribed

to employees absent without authorization, and therefore beyond the pale of First Amendment protection.

## CONCLUSION

In light of the foregoing, this Court **DENIES** plaintiffs' motion for reconsideration (Docket No. 38).

IT IS SO ORDERED.